Thank you, Your Honor. My name is Elizabeth Theron, and I represent the EEOC. I'd like to reserve three minutes for rebuttal, please. The fundamental issue here is to what extent a district court's discretion allows it to impose terms and conditions on a lawful under government, excuse me, on a government agency's lawful conduct of an investigation. This case ---- Are you arguing this, are you making this argument as a kind of a matter of principle, or do you really object to the protective order? We really object to the protective order. All of it? I understand there may be one particular provision that might be problematic, but is your basic argument that a district court had no power to impose any kind of protective order? We're not arguing that district courts categorically have no authority to impose protective orders in subpoena actions. We would, however, suggest that ---- What's the standard of review, then? If he has the authority? Well, the standard of review is articulated by this Court in Phillips v. General Motors, where the Court said that for review of protective orders, it's a two-stage process. First, the party seeking the protective order must show that a specific harm or prejudice will result from disclosure. Then, even if the party succeeds in making that showing, the court conducts a balancing test with respect to the interests in favor of disclosure versus the interests in favor of the confidentiality order, and makes that determination. Part of the reason the district court abused its discretion here is that it did not engage in this analysis at all. Instead, it simply relied on what it called continuing suspicion about concerns it had articulated and rejected in its earlier order enforcing the EEOC subpoena. Well, apparently, if I'm just sort of having been a trial judge and having been an appellate judge on two different courts, I'm sort of — I'm just sort of looking at the whole thing. It looks like the judge really sort of questioned your objectivity as an agency. And this is the same judge that was handling the PARA cases otherwise, correct? Yes, Your Honor. Which I think I was on that at some point.  The argument that I see that — I guess I'm going to ask the other side to explore as well. You are — you aren't supposed to be an extension of other attorneys or other litigants. You are supposed to make — you know, you're the government, and people can come to you, and hopefully that in situations where something wrong is going on, because you have the power of the government, you would do something. And in the first instance, you just issued right-to-sue letters, and you let people pursue privately, which I don't think prevents you from coming back later and doing something. But there does appear to be, as a back story, there does appear that judge seemed to feel that there was some sort of relationship or leaked information that was going to the attorneys that had had adverse rulings on the PARA case and also the unions and things along those lines. And so you did seem to be a little bit under a cloud of suspicion before the district court on that in terms of were you really being objective or were you really operating as an extension of other people where he had ruled in that case they weren't entitled to certain discovery? Correct. So, Your Honor, those are the allegations that Bashes made in attempting to quash the subpoena. The thing is, the district court issued a 64-page decision after its hearing on that issue. It heard the testimony of 20 witnesses. It admitted 45 exhibits over a three-day evidentiary hearing. It had specifically reopened discovery to allow Bashes to explore these issues. And in that 64-page decision, the district court doesn't say, eh, they proved some of it, but they didn't prove all of it, or, oh, you know, they don't meet the burden. What the district court said was they proved nothing. Apart from a selected snippet of testimony, that was the language the district court used, all of these allegations came to naught. The notion that information was being funneled to private counsel in PARA was the district court specifically found that that did not happen, that Bashes did not prove that it happened. So the question is, I understand what you're saying, that there is this cloud of suspicion of what had happened before, and that this is a prospective confidentiality order dealing with going forward, but the district court's findings in that initial decision make it clear that there was no credible factual basis to credit those allegations. So they certainly can't meet the standard in Phillips v. General Motors of a particular showing of harm or prejudice that was resolved. Well, the fact that the Bashes were denied certain discovery and access to certain information, which is going to be provided to you, are they allowed to get through the back door what they can't get through the front door? I want to be really clear on this. During the pendency of the investigation, no one gets anything. FOIA and Section 83 only pertain to once a notice of right to sue has been issued. So during the pendency of the investigation, no one gets anything. At most, a witness in an investigative interview may be shown a document to refresh their recollection or ask them to comment on it, but they are entitled to nothing and they can take nothing with them. After the investigation concludes, if there are ones the Commissioners, the class of aggrieved persons who are subject to the Commissioner's charge has been determined, they may pursue their rights to access elements of the file, either through FOIA or through Section 83 of the Compliance Manual. Again, though, their access to that charge file is severely cabined by the FOIA exemptions that apply and by Section 83. And I want to point out that Section 83, some of the earlier district court cases that were talked about in the briefs talked about Section 83 as, you know, not having an enforcement mechanism or being different from FOIA. That has changed since the D.C. Circuit's Venetian Casino case in 2008. The EEOC actually revised Section 83. So the protective provisions in Section 83 are identical now to the ones that are present   GOTTLIEB Well, I think you've been sitting out here. I always see people sitting out there, so I'm trying to figure out which case they're on while I'm listening to other cases. You sort of heard the argument previously where the government were here to help or where the government trusts us. So it seems that there was a level of distrust and that that somehow underlies the confidentiality. And so if there's a basis for that level of distrust, would a confidentiality agreement be appropriate against the government? Yes. And what I would point you to is the Supreme Court's decision in FCC v. Schreiber talks at great length. In fact, in Schreiber, the court, the Supreme Court found that the district court abused its discretion in entering a confidentiality order in a subpoena case precisely  that it will act properly in the investigative process. Now why do you care if the government is entitled to a presumption it's going to act properly? Why do you object to a protective order which says, okay, do it? Because the protective order goes well beyond the provisions in Title VII, in the other statutes, in FOIA, and in Section 83, and intrudes extensively into the EEOC's ability to investigate this case. So you had asked at the beginning. How does it do that? I mean, they're willing to give you all of the you would get all of the or you have gotten or will have gotten all of the information that you asked for. So you could presumably use that information to conduct whatever additional investigation that you want to conduct. Well, respectfully, Your Honor, that last part isn't true because of the terms of the confidentiality order. First of all, I want to point you to Section 17 of that confidentiality order, which states that this order will govern the entire course of the investigation. And what was before the court is the enforcement of one subpoena. It's PHX-0824. It's not the entire investigation. That alone makes it clear that whatever restrictions the court felt were appropriate for this subpoena, and we don't concede that they are, is intended to apply to the agency's entire investigation. And this is exactly what the Supreme Court was talking about in Schreiber, and the D.C. Circuit is talking about in FCC v. Texaco, and this Court talked about in Wharton v. Calderon. The Court doesn't have the Court has inherent authority to manage litigation proceedings before it. It doesn't have the authority to reach out and regulate the agency conduct of investigations that are not before it. Kennedy, I certainly understand the EEOC's concern. I understand the district court's concern. I think you have conceded that there are certain circumstances where the district court clearly has the ability to protect itself. If you were to parse the order itself, admitting there's a little bit of distrust involved here, what is most offensive? Is it Section 4? Is it Section 9? Is it Section 17? Sure. If we try to be Solomonic here, and say that, you know, the district court had a right to do something, but maybe it overstepped a little bit, what was the biggest overstep from the EEOC's perspective? There are several really critical ones. Okay. What are they? I would start with paragraph 4b, which says that witnesses must sign a confidentiality agreement to be allowed to testify before the agency if there are additional documents as part of that interview. This has a tremendous chilling effect on the willingness of witnesses to testify, particularly if they still work for the Respondent. But did you kind of – I don't want to stop you. I think you should be allowed to finish your answer. But did you tell – my understanding is that you just took a flat-out position that you didn't want any kind of protective order. That's not right, Your Honor. We explained to the Court several times that we had specific problems with this, the proposed terms by Bashes, in terms of our ability to investigate this in other cases. And, sure. And the other thing I just want to say quickly is that you need to be able to do that. I just – I didn't want to – I interrupted. You started indicating which is which. But paragraph 4, the entire paragraph 4, just the – Any requirement that a witness sign a confidentiality agreement in order to be able to testify at all or in part. So provisions 1C, 3, 4, and 13, which all go to the same thing, which is that the presumption of confidentiality is that anything the Respondent says is confidential is confidential. And this is an issue that the Third Circuit addressed in Kronos and the D.C. Circuit addressed in Texaco. Not only – so because of the way paragraph 17 interacts with this, what this means is that every time there's a dispute over whether material is confidential at any time during the investigation, not in the FOIA period, not in the notice of right to sue period, we have to go to the district judge and litigate it every single time, which is a tremendous burden and delay on the agency's ability to conduct its investigation. So that's a huge problem for us. Kennedy. What about paragraph 9? You okay with that one? Could you refresh my recollection as to what paragraph 9 is? Please. It starts, If upon completion of the EEOC's investigation prior to the completion of any subsequent litigation, the EEOC receives a request for documents identified by Bosch as his confidential pursuant to FOIA and so on. Right. Refresh your recollection. So we do have a problem with it, thank you, insofar as it puts restrictions on the way EEOC conducts its legitimate FOIA review. This is an issue that, again, the court in Shriver said that rulemaking authority is delegated to agencies because they have the sort of specific expertise to fashion these kinds of procedures as best meets their subject matter. And the EEOC has an extensive FOIA proceeding in place. And just to touch back on what Judge Corman was saying, I want to make clear that to the extent the EEOC objected to a protective order, we do not object to protection for this information. Our position is that there is a broad network between the statutes, the regulations, the enforcement guidance. In other words, if this order had been fashioned to strictly apply to this case in particular aspects, you would have less concern. And this, you believe that the order is sufficiently broad that it encumbers your ability to do business in the way that the Congress intended. Is that correct? Yes. And if I may go back to my list, because there are other troublesome provisions. Okay. All right. Paragraph 8 says that access to confidential information must be limited to EEOC employees actually working on the matter and cannot be given to or accessed by anyone not directly working on this matter. Now, that's tremendously problematic, not just to our investigation of this case, but of other cases, because it may well be the Supreme Court and Associated Dry Goods said there is nothing wrong with putting charge information in multiple files. And the court in Kronos further said there's nothing wrong with doing it in multiple investigations as to multiple responders. So literally, by these terms, if a commissioner of the EEOC is not working directly on this case, the attorney would be barred from showing the commissioner the information that she or he might want to see to issue a commissioner's charge against another Respondent in another case. There's just no backstop on it. Could I go back again to my understanding that your position in the district court was that you were unwilling to enter into any kind of protective order that goes beyond your existing obligations under law. In other words, it wasn't as if I were sitting in the district court and I was hearing argument on this for the first time, I would say, sit down, maybe we could settle this case. Reasonable people could agree on some sort of a protective order. You object to this, they want that. I mean, the impression that I got is that you basically said, well, there's this compliance manual or whatever it's called, Section 83. Why — why — I mean, it strikes me as something that reasonable people could resolve, unless we're arguing over principle. I think, first of all, I see that my time is up. May I answer the question? Kagan. This isn't a matter of abstract principle. I think we've sort of enumerated in our briefs and here that there are specific provisions of this that give us tremendous concern. But you didn't want any restrictions, essentially. We — we — it's not that we didn't want any restrictions. We are restricted. And the court didn't trust you. And so that was — and so I think it — you know, in fairness to both sides, I mean, I think that you did say, well, hey, we're the EEOC and you're not going to tell us how we — to do our jobs. And the court said, well, you may be the EEOC, but I've seen — you know, but I don't think you're behaving appropriately, so I am going to put some restrictions. And maybe it's overbroad, then. Sometimes when you don't come to the table, you get something fairly bad. I know that that was the district court's view in this case, certainly. But we didn't not come to the table to be intransigent. And we certainly didn't take the position that we're the EEOC and no one can tell us what to do. Kennedy, were you interested in, even at this point, in some form of mediation? I mean, it just strikes me that this is the kind of thing that if you sat — two people sat down who were acting reasonably, that the issue — the case could be resolved, as opposed to, you know, taking a hard-and-fast position that you can't — judge you can't do this. I can tell you from — based on what I know, that there is a long history of the parties sitting down and attempting to talk through these matters, and we were not able to. The EEOC believes that the strong confidentiality protections that already exist are more than sufficient to protect the information here, which is, by the way, not of the kind that courts have held is subject to heightened protection. Well, what about this argument that they're getting information — the lawyer for the union, and that somehow the disclosures might give an advantage to the union in their relationship with the employer? I mean, I've said that right, but I think you know what I mean. Right.  Well, I know — Well, you're an employee, or — you know, I mean, I think you're supposed to be fair. You're not supposed to bring employee cases that aren't justified. But it is a place for employees to go. Employers don't come to you, right? They do actually sometimes for rulings on specific issues that are Office of Legal Counsel issues. So they do come to us. But not so much for the most part to have relief. No, not to file charges. The district court found specifically in its 64-page order that there was no evidence whatsoever that any information had been funneled improperly to anybody. The district court found credible Jocelyn Larkin, who is the attorney's testimony, that she first learned of this charge from defense counsel on January 30th, 2009. So the district court itself found that there was no basis to think that anything improper had happened. Now, as far as prospectively, as I was explaining before, during the pendency of the charge investigation, no one is getting anything. Not PARA parties, not anybody else's parties, not aggrieved persons, nobody. It's only after a notice of right to sue has been issued, and only if the person is within the class, only information as to them, and only information that isn't subject to a FOIA exemption or a Section 83 exemption. So the concern here is really quite narrow based on the existing statutory and regulatory scheme. So essentially, your argument is until you actually issue a – until you actually decide to take action, there's no disclosure beyond – beyond what the statute would do. Take action or not take action. Or not take action. Yes. There is no disclosure. That is Title VII. There are criminal penalties. So why can't you have a truce? You know, why argue about it now? It almost seems premature if what you're saying is correct. In other words, until you do something, you're not going to – you're not giving anybody any disclosure. So why not just have this as a kind of a truce? And when you decide to do something, then you can argue about what you can and can't do. The reason why, Your Honor, is because the provisions in the confidentiality order limit the EEOC's ability to investigate. If the confidentiality order only pertained to the post-notice-of-right-to-suit period, this – we could talk. This would be a different question. But it intrudes extensively into how and whether the EEOC can investigate this Commissioner's charge, and this is exactly what the Supreme Court in Schreiber said was inappropriate. So why didn't you do anything before? Why did you wait until the Paras – they lost in court, essentially. Why didn't you do anything about this before? Well, we did. It depends. So as far as lost in court, they didn't lose in court. What happened was – Still wasn't going, I guess, right? It is – yes, in fact, just last July, and I'm not – all I know about Para was that I checked the docket before I came here, so opposing counsel may be able to better help you. But just this past year, the Court, in fact, certified a class in Para as to the equal pay claim. That was a case that was filed in 2002 and is still ongoing. But the ruling in question was just a – it was a motion for class certification. No, but I think what Judge Callahan, if she could correct me, is referring to is that you've got – that Para basically lost on their argument for additional discovery from what – from what was it? And so now, suddenly, you want to investigate? And then you come in and you ask for the discovery that they didn't get from the judge. I think that's what they were asking. Well, actually, the Court noted that the timing on that is off, actually. On February 2nd, 2009, at 11.35 a.m. per PACER, we filed the motion to show cause on the subpoena. The district court denied their motion for future discovery at 2.50 p.m. on the same day. We don't have a mole in his office. We didn't know that he was going to make that decision. This was a commissioner's charge that was issued in May of 2007, and there had been multiple subpoenas and multiple attempts to enforce it prior to 2009. It had been going on for a couple of years. So it isn't that we didn't do anything. We did quite a bit. But the instruction is that the investigation is really hamstrung by the lack of the data at issue with this subpoena, which is really the core of the wage and promotion claims. Okay. Alitoso, is this case possible, one for mediation? Well, Your Honor ---- Just state your name first. Sure. I'm sorry. And then you can jump right into that. Thank you. Doug Janicek on behalf of the Appalooh Bashes. Your Honor, it very well may have been if these positions had been taken previously. Let me be clear. Well, it could be subject to mediation now. Your Honor, up until today, we had not heard a concession that under no circumstances will these materials be disclosed outside of the EEOC during the investigation phase. That is completely new. That is not in their briefs. It's nowhere in the district court below. They have always reserved the right to show these materials to charging parties, which is over 40,000 employees in this commissioner's charge, and any witness that they deem necessary as part of their investigation. So that was the premise of why we insisted on confidentiality below and now on appeal. With that being clarified, we are, I think, at the bar of what my counsel referred to, a lot more narrow of a dispute. Section 4 of the confidentiality order regarding FOIA tracks FOIA. It is vastly different than what's in Cronus. In Cronus, what the district court required was that if the EEOC is going to disclose materials and Cronus objects, the EEOC couldn't do it. They just basically had to sit back and wait for the requesting party to sue. And then the EEOC had to allow Cronus to intervene. That's not at all what we have here. For post-investigation, the investigations closed were in the FOIA stage, Section 4 tracks the law. They have to give notice to us if somebody requests the materials. We can object. They make their independent determination consistent with the law. And if we disagree, we, Bashes, has to go into district court to seek a protective order. That's exactly what FOIA is supposed to do. So I was a bit confused by the EEOC's objections to that paragraph, and perhaps now it is clear now that we're on appeal that that isn't a problem. Well, so what were the district court's findings that justify putting this on the EEOC? Thank you, Your Honor, plenty. There were extensive findings. Well, if let's just say that the only thing were that, hey, I, PARA, you do not get this discovery after 2004, and I'm not, how do, just the fact that that could be for procedural reasons. They could, and it sounds like it might have been from the standpoint, if you'd wanted to make this, extend out this claim, you could have done that before. But now the procedural status of this case is such that I'm not going to allow you to reopen discovery, all right? So that doesn't, but how does that, per se, turn into its confidential information? It may not be confidential information. It just may not be, they may not be able to open discovery in the litigation. Well, the district court did find that the materials that are going to be turned over are very sensitive. I mean, that is in his order. Now, he did recognize that it may not be as sensitive as employment tests or medical information that were at issue in some of the cases cited by the EEOC. But he said specifically, given the close ties between the PARA litigation and this charge, you know, he, he actually suggested that it may be even more sensitive than those types of information. Oh, but what would the harm be? Well, the harm. What can you say the harm would be? Well, the harm would be if. What did he say? What did the district judge say? The district court said that the harm could be that, and these are his findings, that he found it, that he had grave concerns over the close ties between EEOC and PARA. And he recognized that he could not, and these are his words, turn a blind eye to the strong correlations between setbacks for PARA and the EEOC's conduct in this case. So the harm is the threat that whenever something doesn't go. But the EEOC counsel said he couldn't. It's sort of like I'm suspicious, but I can't prove it. I can't actually, there's no evidence, but I just suspect it, or what's. Well, I. You know, it's, it's kind of like asking a jury, yeah, he probably did it. We all know he did it, but we can't prove it beyond a reasonable doubt, so let's charge him anyway because he probably did it. You can't do that, so what happened here? I understand, Your Honor, but we're talking two totally different standards. When he said he didn't find anything improper or any wrongdoing on the part of EEOC, he was applying the children's hospital factors that go to enforcing the subpoena. Is it relevant? Is it within their authority? Bashes hasn't appealed that, and that's a very high standard. He makes clear that it's a very high evidentiary burden to show bad faith on the part of an agency in an investigation. But that's a totally different standard than Rule 26, good cause and confidentiality. Under Rule 26, there's no requirement that you establish that the requesting party is acting in bad faith, has done anything wrong. The issue, the issue under Rule 26 is the nature of the materials and the circumstances of the litigation. So there didn't need to be a finding by the district court that they operated in bad faith. It was enough that he listed out the findings that this was a unique situation. He didn't. Well, but he's not putting – essentially what the EEOC counsel is arguing is essentially it puts them under almost like a receivership, that they can't go – they can't do their job in that if they find something here, then they have to go – they want to go talk to their supervisor. It may have some crossover that therefore they could be violating an order, you know, that it puts them in a state of paralysis. I do understand that point. What I would say in response is in this commissioner charge, and to be clear, the confidentiality relates to the investigation of the charge, not that specific subpoena. And this charge is enormously broad. It is basically wages, promotion, and Hispanics. That's basically as detailed as it gets. So I'm not so sure that that's really much of a hindrance on their ability to investigate. It's a rather – it's a commissioner's charge. It's very broad. I agree, counsel. I mean, we've got the district court with its inherent powers. We've got the EEOC with its statutory mission, and there's a bit of a clash here. The district court fashioned a protective order which may be overbroad. Do you agree that if this court concludes that there are portions of the order that are overbroad, that the thing for us to do would be to strike those, or should we send them back to the district court for refashioning with certain precautions in mind? What should we do? If – I just – I don't understand. To answer your question directly, I would think the better avenue would be to remand and allow this to be hammered out by the district court and the parties for two reasons. Number one, Judge Broomfield is the one who has lived with this case since 2002. So I think he is in the best position to make whatever conditions he deems necessary. The second thing is – and again, I don't mean to harp on it, but I really believe that these are new positions I'm hearing from the EEOC today that we did not hear below. So if with those concessions, it's possible that Judge Broomfield would take those into consideration. I would only add, though, that in this case, I think when you look at it, that really being the main issue, because the other issues with post-investigation, I think I've clarified that there really is no overbreadth there. It's really about the investigation. Up until now, the position the EEOC has taken is you can't tell us what to do with these materials at all. The district court basically – you can't go beyond the statutory. I gather it's your position that whatever the law about the ability of EEOC personnel to discuss matters during an investigation, that they have in fact done so, or at least arguably have done so, and that's why you need protection during the investigative period. Correct. There are several facts that go to this. It's undisputed that there's conversations going on between the PARA counsel and the EEOC. And the district court, again, picked up on the fact of these close – But why is that necessarily wrong or unusual? A lawyer for a group of people who claim that they were discriminated against, that is a from the EEOC. There would be nothing wrong if they wanted to persuade the EEOC to file a charge even at that later point. I understand, Your Honor, but I think the problem that Bashes has, and the district court certainly was explicit on this, is that this all started with the timing of EEOC maneuvers. The counsel for EEOC seems to say, because she can differentiate with a few minutes in time, that there's no collaboration. Meaning that's their position. The timing that she said something was at 1.30 and something was at 1.40. That's a completely different issue. That was with respect to the filing of the order to show cause. What the judge was referring to below was the fact that Judge Broomfield cut off discovery in April of 2004. That was going to be the cutoff. No, but the cutoff doesn't really say that the material – it doesn't mean the material is confidential or sensitive. It just means for purposes of this particular litigation, I'm not going to let you change your procedural process, your procedural posture at this point in the litigation. You waited too long. That was my understanding of the – of that ruling. True, but what the district court then was saying was, first of all, he recognized – I mean, this is personnel data. It is, in fact, confidential, addresses, phone numbers, salary information of all high-level execs at batches. This goes all the way to the top. So this is very – promotion data. So it is sensitive data. And I think the district court correctly recognized that. Then what he said was, and now given how the EEOC has taken action, when something goes bad for the par of litigation, that's what caused the district court the grave concerns. And it happened twice. Sotomayor, let's assume that – okay, the EEOC should not be an extension of someone else. They should – they're supposed to be – you know, we give – it's like the attorney general, that the attorney general isn't, you know, say like a case is lost in the State courts, and then the attorney general is supposed to objectively analyze whether a civil rights case can be filed. So if, in fact, the only reason the attorney general were filing a civil rights case was because they're just helping out some attorney, that would not be a proper exercise of the discretion we give the attorney general. It seems to me that what the district court is suspicious of is that the EEOC is not exercising its independent discretion. But is there really – is there evidence of that here? Yes. Two times there was a setback in PARA. The first one was when the class cert motion was originally denied. What followed was the commissioner charge. Right on the heels of that. But can't they work – you know, the government has a lot of things to do. And sorry to say this about any government agency, but I've worked for the government for a long time. Sometimes they like to let other people carry their water until such time that the water can't be carried anymore, and then they decide they'll leap into action. I mean, they issue a lot of right-to-sue letters that probably they could undertake an investigation, but they have limited resources, and so they make those decisions. So why does that – why does it mean when the private things are not working out per se, the jump is that the EEOC is? It doesn't. We're not appealing the enforcement of the subpoena. We did have issues below on that, but it's been enforced. The boxes of these documents are sitting at bashes right now. And I point to the record, two-and-a-half years ago, November 3, 2011, we sent a letter to the EEOC after the district court enforced the subpoena. We said, here they are. Please contact us so we can make logistical arrangements. We haven't heard anything. So I don't necessarily have – I don't disagree with you that, yes, they can certainly bolster private litigation with a commissioner charge. We're not disputing that. But the district court has inherent authority, given its, you know, proceeding over the – both actions, to put reasonable conditions on the dissemination of that information. Nobody is telling the EEOC in this case that they can't do whatever they want to with the materials. Scalia's argument is that under their own construction of the law, they can't make any disclosure until after their investigation is complete, and then they issue either a no – a no right to sue letter, or they decide to take formal role in suing. Respectfully, that was not their position below. And if I could point to their own briefing that the EEOC has issued a right to sue letter, I would assume it's their position now, if I understood it correctly. So what problem do you have at this point, assuming I've accurately stated their position? No, I mean, I think the confidentiality, then, order is perfectly fit for this case. I mean, I guess I would say we don't have a problem, and it's hard to see why the EEOC then has an issue. If they're not going to disclose anything during the investigation and track FOIA, which the order does, post-investigation, the only issue, then, is they talk about, well, showing a confidentiality agreement to a witness might be a deterrence. But there's no evidence of that. That's pure speculation. I mean, that's simply saying, well, that could happen. Well, so you don't object if it did happen, showing it to a witness? It wouldn't be all your 40,000 documents. I assume they would be showing a relevant document to a witness. Provided they sign a confidentiality agreement. If I understand the EEOC's position, that's the sticking point, is that they don't want that, to which our response is, you know, that seems reasonable, and in any event, the district court, you know, with its factual findings, and again, those are entitled to a deference. I mean, this is an abuse of discretion review, and Judge Broomfield was in the position, the best position, to evaluate all the moving parts of these two cases and say that that's a reasonable condition. I see I'm out of time, unless there are other questions. I don't think they have additional questions. Thank you, Your Honors. We used all of the questions. Did anyone have additional questions of the government lawyer? Well, that's our decision. If the Court doesn't have additional questions, we've used the time. So I'm assuming that the record is what the record is, so we're capable of ascertaining that. So, all right, thank you both for your argument in this matter. This matter will stand submitted.
judges: Korman, Callahan, Smith